162214, David Pagan-Gonzalez et al. versus Anna Moreno et al. Good morning, Your Honors. Carlo, good morning. On behalf of the appellant in this case, may I please report? Go ahead. Ten agents of the federal government arrived at the home of a family. The father of the home is a captain, a pleasure boat captain. He's there with his wife and with his 21-year-old son who is a college student. When the agents arrive there, they knock on the door and make a representation to the dwellers of the property after flashing their badge that they are there because of the fact that computers in that home are sending viruses to Washington, D.C., to entities in Washington, D.C., the nation's capital, so that they are there to fix a problem and that they were seeking the authorization of the members of the family, their consent, to have access to the computers for the purpose of determining whether those computers had anything to do with those viruses, the transmission of those viruses, and because they were there also to clean those computers and return them to the members of the family. So under that argument, the members of the family, the three of them, signed consent forms. Those consent forms were used by the agents to then gain access to several computers that were at the home, in particular two of them, and after examining one of the computers, they said that they would be cleaning the computer in order to return the same to the son of the family, the appellate, David Pagan-Gonzalez, who was a college student, as I mentioned at the time. So when the agents were about to leave the property, the captain, the father of the house, indicated, hey, you're taking the computer, which is the computer that my son uses for college, he needs that computer. And the agents at that point, they say, well, there's evidence in this computer of a criminal violation. So we'll deal with the computer, fix the computer, and return the same to you. And they leave the premises. So when they leave the premises, what would be the reasonable inference as to the members of the family as to the event that had just happened? The agents went there. Obviously agents are there not to repair computers. They were there because there are agents that were conducting a criminal investigation. And the criminal investigation was related supposedly to the transmission of viruses to Washington, D.C. And in that computer, they found criminal evidence. Related to what? Obviously related to the investigation, which is about that transmission of viruses. So the agents leave the house. They remain there, expecting that at some point they will be contacted and the computer will be returned to them. Thereafter, to their surprise, they were the subject of a raid. Federal agents arrived there, arrested their son, took him to federal court in San Juan, where he was informed in a hearing, in an initial appearance, that a complaint had been filed against him for having to do with child pornography. So at that point, the family was surprised. Why? Because when the agents were at the home, nothing was mentioned about anything having to do with child pornography. Nothing was mentioned about anything having to do with any other violation. I take the timeline you lay out would justify why you get past the statute of limitations. Definitely. Okay. Then there's still the question of on the merits.  For me, it's clear that they understood that they were injured when the arrest was made. I understand what your argument is about getting past the statute of limitations. As to the merits and getting over qualified immunity. As to the merits, there are two aspects of the merits. If you review the order entered by the court, the court mentions that it was a fault by the fact that these agents entered the home without a search warrant, lying to just members of the house in order to gain access to the computer. So you say, okay, so then you say it's clearly established that the seizure of the computer was illegal, so you can sue under Bivens for that. How do you deal with the malicious prosecution claim? Okay, Your Honor. When we get to malicious prosecution, obviously the court also establishes what are the guidelines for that. And one of the guidelines, Your Honor, is basically whether the prosecutors somehow were misled by the agents when the case was filed. Do you have a case that suggests that what they mislead them about is not whether the evidence that was relied on to establish probable cause is correct, but simply what they misled them about was the means of acquiring that evidence? Yes, Your Honor, and that would be a typical question that any prosecutor would ask. No, I'm asking whether you need to show it was clearly established in order to get overqualified immunity that misleading and pretrial proceedings to get the – was it the grand jury here that? Initially the complaint was filed, Your Honor, and later they went to – before grand jury. And was he detained following the complaint? He was detained following the complaint. You have to show that the misleading the prosecutor to acquire the complaint is itself a clearly established basis for going forward on a Fourth Amendment malicious prosecution theory. Not only misleading the prosecutor, Your Honor, they also misled the magistrate. Both of them, yes. But I haven't been able to find a case that addresses that issue because what's – there's no question that the actual evidence on its own supports probable cause. The only thing that would lead to it not being sufficient to promote the arrest or support the arrest was the fact that it was But as the district court said, we don't usually say you can bring a malicious prosecution claim just because unlawfully acquired evidence was deployed. So here you're saying what's unique is that they hid from the prosecutors the illegality of the acquisition of the evidence. Yes. I'm not saying that they hid that evidence because – We don't know yet. We don't know yet. But they didn't disclose and it's fair – you're fairly alleging that they – are you alleging? What are you alleging? We're alleging that, Your Honor, but what we're saying is that there was sufficient – in the complaint, there was sufficient allegations from where the court could make that inference. Yeah. That if we enter into that discovery phase – Do you have any authority, though, that suggests that a malicious prosecution claim can go forward on the basis of failing to evidence that in and of itself does provide probable cause? Your Honor, it goes to the decision that the prosecutor must make whether he has a case that he can file in court. And the prosecutor has to authorize even the filing of the complaint. So as a former prosecutor, I will tell you that any time that we have cases – I'm just trying to get – you have to show it's clearly established law.  I understand, Your Honor. So I'm asking you, what authority are you relying on to show that it's clearly established? You're just saying it just has to be the case? No. So what is the case – is there any precedent out there that supports this notion that not disclosing evidence to the prosecutor that would reveal how the evidence that does support probable cause was illegally acquired itself can support a malicious prosecution claim?  Your Honor, what I'm saying is that had the agents revealed to the prosecutors how they obtained access to the computers, had that information been revealed, then the complaint would probably not have been authorized. The agents would not have gone to a magistrate and present a partial version of the facts, and they wouldn't have gone to the grand jury to obtain an indictment against these people. Because the inference, Your Honor, is that as soon as the defendants brought to the attention of the court the file of motion indicating how the evidence had been obtained, there was no opposition by the government. The case was immediately dismissed. And why would you dismiss a case involving child pornography, which is an area in the Justice Department where there's a lot of emphasis on filing cases and where you have allegedly evidence that the person confessed to the events and that there were minor children involved also, that he had access to minor children. So around all those facts, the case was simply dismissed. It was dismissed because the agents did not only protect the rules we proposed to this family but also to the prosecutors. And we understand that we should be allowed to enter into discovery in order to determine what exactly happened here. This is a criminal case, and the evidence that's available to the plaintiffs in this case is very limited. We get orders from the court, and the government has the right to present reasons why we should not enter into any specific evidence. And maybe something else that the court can examine and determine how much of that cost of action that we're presenting through that discovery could lead the case to a reasonable resolution. Thank you. Judge Lipman? Counsel, you invoked in support of your position the Hernandez-Cuevas case. It strikes me that there is, and this has really been alluded to by Judge Barra, I mean there's a fundamental difference between the allegations that were made there and what we have here. There, the allegation was that the officers had fabricated evidence, fabricated, created false evidence, which was indispensable to the probable cause determination. We don't have that here. I mean, the claim was that the officers engaged in an illegal search, which then yielded evidence which provided probable cause for the issuance of the complaint by the magistrate. And so I share Judge Barron's concern that there are no precedents in this scenario where there's no dispute about the evidence, however it was obtained, providing probable cause, that that provides a basis for a malicious prosecution claim. And so if you cannot cite the case that Judge Barron has asked you to cite, I do not know how you can overcome the qualified immunity determination of the district court. I mean, you've got to have clearly established law if you're going to overcome that. I just don't see it here either. Yes, Your Honor. In the opinion and order that was entered in the case, the judge below made reference to the fact that in this case the appellant was not making an argument that he is innocent and that the case is a fabricated case. To the contrary, Your Honor, I believe that that finding is wrong. I believe that in this case there was an initial appearance, a complaint was filed, the defendant entered a plea of not guilty, he defended actively his innocence in the case, he indicated that the alleged confession that the agents alleged that he gave was not so. So we're talking about a case in which through adequate discovery. Does your complaint say that the criminal complaint and or the grand jury decision were predicated on the entry of a confession that you allege was fabricated? Your Honor, what we are pleading in general terms is that the whole case is fabricated. How can you claim that? I mean, fabrication to me implies creation of evidence that doesn't exist. The problem is not that the evidence here doesn't exist, it's that you claim, as I understood the case up to now, is that it was acquired illegally, not that it doesn't exist. Well, Your Honor, my clients, they claim that the evidence was fabricated, that in their computer there was nothing having to do with child pornography. That's their position. But you don't make any allegations that they fabricated it. I mean, maybe your complaint doesn't say that. Well, Your Honor, what I'm saying is that the history of the case and all that the judge below had before him is that this is a person claiming his innocence. He's not saying that he committed the acts that he was charged with. To the contrary. That's just a separate point. I thought your complaint was that what the police did that was illegal and therefore that grounds both your Bivens claim about the seizure of the computer and then your Melissa's prosecution claim was this ruse that was an unlawful means of acquiring the evidence and that you were not saying that had they not done that ruse, you would have a claim under either the Fourth Amendment, under either theory, because you weren't contesting, at least as I understood your brief and the complaint and the way the case came to us, that the actual evidence on the computer could have supported probable cause. What you were contesting was that they had illegally acquired that and never disclosed it to anyone. Your Honor. Is that not right? You're right, but however, we have to responsibly, we have to plead the facts that we know, that we can provide evidence. So just on those facts, I thought you were, maybe you're also asking additional facts, but just on those facts, I thought you were saying you could win on both theories under Bivens. Well, what we're saying, Your Honor, is that there's sufficient allegations in the plaintiffs. If the judge made reasonable inferences in favor of the plaintiffs below, he would have allowed discovery that would then permit us, as a counsel for them, to establish the specific facts, because what the facts point here, they point to a situation where the Justice Department's office reacted immediately when they were presented with the facts. What happened, why that happened? Why the agents were transferred away from Puerto Rico after this case? Those are, whether any action was taken administratively against those agents. Those are questions that only discovery can answer. Your time is up. In order. Thank you. Good morning, Mr. Boussa. Good morning, and may it please the Court, Joe Boussa on behalf of the appellees. I'd like to begin where the Court left off, and that is the question of qualified immunity. There are several paths to affirmance of what the district court did here, but I think the easiest path by far is the one already identified by Your Honors. On the first set of claims regarding the search, plaintiffs have never identified a case that would put beyond debate, in the language of the Supreme Court in the Al-Qaeda case, that the strategy used here was clearly beyond what the Constitution allows. For that reason alone, the search claims were properly dismissed. Why is that? Your Honor, that's just because in order to prevail on the search claims, they would have to identify clearly established law that would put every reasonable officer on notice. That a stratagem like this, in this sort of context. So you're suggesting, in your brief, that if the allegation implies imminent harm to the plaintiffs or anyone else, that is an impermissible means of acquiring information. I think that can be, yes, and so I think the paradigmatic case there, Your Honor, would be a lie about. But why isn't, when the FBI shows up at your home and says, you're emanating viruses that are causing harm in Washington, D.C., why doesn't that imply immediate harm to someone else? Oh, no, Your Honor, I think that's far afield from the cases we know, where the ruse can initiate consensus. Your own brief says none of those allegations implies imminent harm to the plaintiffs or anyone else, nor do those allegations imply an emergency requiring the plaintiffs' immediate collaboration. That just doesn't seem like a plausible description of what happened here. It does seem like it implies an emergency that does require the immediate collaboration, because the FBI showed up at my home and said, you're giving out viruses in Washington, D.C. I would think they must think there's a big problem. Well, no, Your Honor, so I think the paradigmatic case is the bomb is in your home, and if it goes off, it will kill you and your family and your neighbors, and we need to get access. I don't think anyone could say no to that proposition, Your Honor. Suppose it says that viruses are coming out of your house and disrupting operations in the White House. Oh, I think on other hypothetical cases – That was not that one. Your Honor, I think that might get closer to the line, but again, I think that – You still think that would not be enough? I mean, you know, under Hope v. Fells, you don't have to have the exact same case. So you rightly in your brief generalize from the case, and you set forth a standard. The way you put it is the allegations have to imply imminent harm to the plaintiffs or anyone else. The allegations imply an emergency requiring the plaintiffs' immediate collaboration. If the FBI shows up saying you're having viruses emanating – they show up in Puerto Rico, and you have viruses that are emanating in Washington, D.C., I would think that implies that there's an emergency which we need your immediate help with. You're thinking it does not? No, Your Honor, the allegations in the complaint raise no indication that it was a virus that was interfering with an important function of the federal government or the government's ability to prosecute crime. You don't think Washington, D.C. implies that? You just thought it was somewhere in Washington? I think that's a fair reading of the complaint, Your Honor, indeed. But I think just to get beyond the facts of the allegations in this case, I think the broader point is that I think it's a proposition that reasonable people could debate whether the rules used in this case – If all reasonable officers would have been put on notice that a ruse like this was clearly beyond constitutional bounds, yes, Your Honor, that is the standard for overcoming qualification. So the only argument you have is it's not as bad as a bomb, and people might not have thought that they were suggesting there was an emergency that they needed help with. I think that's right, Your Honor. So just to illustrate that, I think it's helpful to look at, say, the Brown case from the Pennsylvania Supreme Court, which the Third Circuit approved of. That ruse involved the following allegations. Officers investigating a murder go to a suspect and say, I know you're having very significant financial difficulties. I would like to take the gun you recently purchased and help you sell it to somebody else and get a good price for it and give you the proceeds. But, meanwhile, what they actually intend to do is to search the gun. That's just huge deception. But that's different. It's clear under the law you can deceive. What you can't do is imply that there is an emergency you need to help the government with. And it just seems hard to see how this isn't exactly what the government did here. Oh, Your Honor, I think that everybody in their common --- The case you just said is not a case in which the government implied there was an emergency they needed help with. What you need is a case that says, in an instance in which it would be reasonable to assume that they were implying there was an emergency they needed help with, a court saying that's okay.  Your Honor, I think they would just bring us back to an analysis of the allegations in this case and whether they truly constitute an emergency. And I think our position is just that people in their everyday experience have experience with viruses. It's not seen as being an imminent harm that no one could turn down the proposition of someone coming in to help fix. And we think that's different from the bomb hypothetical. However, I think that there's an alternative grounds for affirmance here on the timeliness question. So if you disagree with me on the qualified immunity issues, you wouldn't have to reach those questions. If you instead concluded, as the district court properly did, that the plaintiffs in this case were on inquiry notice about the use of the ruse, either on October 23rd, the day of the searching question, or sometime during the next seven weeks before the arrest was effected. Let me go into that. Am I correct that there's a series of cases where the government engages in, quote, fairly serious affirmative misrepresentations, end quote, that you might have a problem with? Your Honor, I believe you're referring to the Irvine case, Judge Bryan. One of them, also Betta from the Fifth Circuit. Raise the Betta. Your Honor, so, of course, in the Irvine case, Judge Bryan indicated that the Fifth Circuit's case law is under some significant doubt in light of the Supreme Court's case law on undercover police ruses. And so I don't think that the Fifth Circuit case law alone would establish that a ruse like what was used in this case is clearly beyond. Now Justice Breyer was then speaking for this circuit. So we're talking about First Circuit law also. Indeed, Your Honor. And so I'm not aware of a First Circuit case identifying a stratagem like the one that was used here as being clearly beyond constitutional bounds. I think to reach that conclusion, you have to do so from first principles, and that would require you to conclude that no reasonable person could conclude otherwise. If we wanted to, let's say we found for you, but we thought, given the seriousness of the issue, it would be important to clarify what the rules of the road are here. Does the government have a position as to whether this is a lawful stratagem? Your Honor, we do think that this kind of stratagem can be lawful in this context, but I would caution you against. Then why did you drop the case? Your Honor, I'm sorry, the record does not reflect that fact, and I don't happen to know it. The fact is you dropped the case. Yes, Your Honor. This is after submitting it to the grand jury and getting an indictment. Am I correct? That's correct, Your Honor. And while there was pending a motion to suppress. That's correct, Your Honor. I believe so. It has to have some significance. Are we supposed to guess why you did it? I'm sorry, Your Honor, the record simply doesn't reflect why it happened, and I myself don't happen to know. I don't think you can infer that it's because the government doubted its ability to prevail on the motion to dismiss. Moreover, there could be sort of bad incentive effects on making that kind of presumption. It could cause prosecutors to fail to dismiss cases they otherwise would simply to guard against follow-on Bivens liability. But to return to Your Honor's question about whether — Wait, wait, wait. You're in too much of a hurry. Slow down. I apologize, Your Honor. I'd like to know the allegation that you transferred the agents out of Puerto Rico. Is that correct? To my knowledge, they are serving outside of Puerto Rico right now, yes. But I believe that's consistent with the Bureau's practice of rotating its field agents, I believe, every two years. But, again, that's not reflected in the record, and I don't happen to know the details of their transfer. But to get back to Your Honor's question about whether you ought to say something about the Fourth Amendment question on the merits here, we think under Pearson v. Callahan, this would be a bad vehicle to do that. In that case, Justice Alito, writing for the Court, says that when the factual allegations are unclear on the motion to dismiss and where — There's no dispute about the factual allegation being that there was this ruse. You're not even disputing that this was the ruse used. I think that's true, Your Honor, but — So just on the question of whether this is a permissible ruse to use under the Fourth Amendment, if we're talking about incentive effects, it's of some concern that the government seems to be in the position that they could do it again. So, Your Honor, I think that you were hypothesizing perhaps there was some other ruse at issue in which the allegations are, you know,  No, no, no, just about this ruse. Oh, I see. This ruse, your position seems to be, the government's position seems to be, that in the future, they could do this again, lawfully. Your Honor, you know, again, I think we're most strongly relying on qualified immunity. I know, but — To answer my question, yes. One consequence of deciding things on the basis of qualified immunity is that they remain unclear going forward. So if the one possible solution to that problem is to clarify it, even if the government were to do it, the government seems to be of the view that it is lawful to use this ruse in the future because apparently it would not reasonably lead one to think that there was an emergency. Well, just to put a footnote on that, it would have to be an emergency that would overwhelm the person's capacity to consent, Your Honor. One reason why we think — and if I could just finish up the thought, I see I'm out of time. We think it would be best for this Court to address the potentially difficult Fourth Amendment questions on the merits following a motion to suppress where you could have a better factual record and better briefing on that issue. Now we are further in time away. That means we wait for the next time you do this to someone. Your Honor, I think that the Supreme Court — That's the only way it would come up. That's the only way it would come up, is a motion to suppress. I think that's right, Your Honor, yes. But, again, we think under Pearson v. Callahan, this is the kind of case the Supreme Court had in mind that would be best to decide on the second step of qualified immunity. I see my time is up, and I ask that you affirm. Thank you. Oh, I'm still subject to more examples. Yes, I do have a question. Counsel, you began your argument by pointing out that there are a number of ways to affirm. I want to ask you about what I sense is one that you have not addressed in your argument. I gather your position is that — because I'm focusing now really on the malicious prosecution claim and the interaction between the officers and the prosecutor. I gather it's your position that these officers who knew about the rules that were used to obtain this information had no obligation to disclose the certain — the affidavit indicates the consent was obtained. There's no detail as to how the consent was obtained. And I gather it's your position that they would not have to disclose those details because of — and I think this is what you say in the brief — there's well-established law that as long as the evidence put before the magistrate meets the probable cause standard, it does not matter how that evidence was acquired. And so these officers, given that background law, had no obligation to tell the prosecutor how that evidence was obtained. And do I — and I think you go on to say — and maybe this goes back to some questions that Judge Brown and I were asking earlier. There's no — I think you said there's no law to the contrary. Is that your kind of bottom-line position on qualified immunity? No, Your Honor. So on that second set of claims involving the arrest, detention, and prosecution, we've identified five circuit courts that have held on the merits that it does not work a further constitutional harm, separate and apart from the search, to use the fruits of the search in justifying probable cause, and even providing the entire basis for probable cause. Five circuits have said that in holdings on the merits. In published cases, the Seventh Circuit has agreed in an unpublished case, and this circuit has agreed twice in unpublished cases. In any of those cases, was the evidence of the illegal acquisition withheld from the affidavit that was used to get probable cause? My understanding is that is true in all of those cases, Your Honor. The evidence of the circumstances in which the evidence was acquired was withheld? I believe that is the case, Your Honor, but I would have to double-check the cases in order to make sure. That's the whole question. No, I'm sorry. Maybe that's misunderstood. The evidence was the entire basis for the probable cause determination. Was the evidence of the illegal acquisition of it withheld in those cases? I believe in those cases the person – so there's two types of cases, Your Honor. One is in which the officer who violated the Fourth Amendment then goes on to make a probable cause determination for arrest. In those cases, the officer would know of the basis, right? Right. And then I believe there are other cases involving some other decision-maker going on to make a probable cause determination. And my belief is that in those cases, the person making the probable cause determination was told about the fruits of the search, but did not know about the things that were made the search illegal. Do the cases say that? Do the cases say that? I'm not sure the cases focus on that aspect of the inquiry. If they don't address that issue, then they're just not addressing the question of whether there might be a constitutional problem that inheres in withholding from the magistrate judge who's supposed to make the decision the information that might bear or whether they grant the probable cause. That's the whole point. The idea is the magistrate sort of breaks the chain. It makes it clean. If the magistrate makes a bad judgment, that's nobody's fault. That's not malicious. But the problem is if you were to intentionally withhold from the magistrate the capacity of the magistrate to make an actual judgment as to whether to allow it to go forward rather than to suppress, you could see what the concern would be. Well, I think the concern would arise only if the magistrate informing the magistrate's judgment about whether probable cause exists must apply an exclusionary rule in determining if there is probable cause. If no such exclusionary rule applies, the magistrate's own judgment, then whether the information was withheld or not would be immaterial to the determination of probable cause. No, because the magistrate wouldn't have had a fair chance to make the decision. That's the problem. It's like it's a Brady violation. You have a duty to disclose under Brady the information about how it was legally acquired because that could lead to the suppression motion. So the prosecutor withholds it beforehand, creating that same kind of potential constitutional problem. Even though the magistrate has later blessed it, the problem in here is in withholding the information that would lead to the suppression. Oh, no, Your Honor. In none of those cases, that's that point. That's all I'm saying. So that's true. But where you're already in a criminal prosecution, we know the exclusionary rule applies. Of course, when there is a prior fourth-minute violation, there's a question of what is the scope of the evidence that must be suppressed. One of the questions that you would have to answer there is if there's a follow-on search blessed by a magistrate. Was the magistrate told of the fourth-minute violation? Because if they were not, if they would not have granted that search warrant, then all of the evidence flowing from that second search would also be tainted. It must also be suppressed. But when you're in the mind of the person making the probable cause determination before you've even gotten to the criminal You can form the probable cause determination on the basis of tainted evidence. Would the magistrate have been permitted to deny the arrest warrant on the ground that this was illegally acquired evidence? Your Honor, I think the answer from those circuit cases is no. But I'm not sure they speak clearly in those terms. They tend to focus on the fact that we're now in civil bivens litigation. But I think the Ninth Circuit in one of its footnotes makes clear that asking the question whether the exclusionary rule applies in a civil bivens litigation is actually the wrong question. The question is, does the exclusionary rule apply to the magistrate making the determination? Their answer there is no in that footnote. And I don't know if Judge Lippert was finished. Well, I just have one other quick question. Just returning to the circumstances of the search. You acknowledge that a ruse or that is sort of coerced, that has coercive features might initiate the consent. My understanding is that 10 agents showed up at this house telling this story. Why isn't there something? I think that's the allegation. That seems inherently coercive when you have 10 agents showing up at your house expressing urgency about the need to conduct this search of the computer. Why isn't that inherently coercive? Your Honor, there's no indication, there's no allegation that these agents were brandishing firearms. They did not detain these people. And in the detention context, this court has held that 15 armed FBI agents are not inherently coercive. They don't vitiate the capacity of the detained individual to consent to a search. And so we think that that on its own would not be coercive, nor in conjunction with this kind of ruse would it be. But I think the main point for the government would be that no clearly established law puts beyond constitutional bounds what happened here. And we think that alone suffices for disposing of the search claims. I see I'm well over my time unless there are further questions. Thank you.